## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SENTINEL INSURANCE COMPANY, | : | CIVIL ACTION |
| LIMITED | : | |
| | : | |
| vs. | : | |
| | : | NO. 14-5450 |
| | : | |
| MONARCH MED SPA, INC. et al | : | |
| | : | |

### MEMORANDUM

**KEARNEY, J.**                                                    **APRIL 30, 2015**

Commercial insurance policies define the insured's scope of recovery and the insurance company's obligations to indemnify or defend upon a defined loss. Sophisticated commercial insureds, such as a medical spa offering liposuction surgery through doctors and nurses, purchase a level of insurance coverage based on their business judgment. We do not re-write insurance policies because the negotiated terms excluding certain claims from coverage do not save an insured from claimed financial ruin. Here, Plaintiff medical spa owners purchased an insurance policy that unambiguously excluded coverage for claims related to exposure to bacteria and for "bodily injury" arising out of, rendering of, or failing to render any professional service. Notwithstanding our curiosity as to the business reasons for a medical spa purchasing a policy with these defined exclusions, there are no disputed issues of material fact concerning these exclusions defined in the purchased insurance policy. The numerous claims arising from personal injuries admittedly caused by Plaintiffs' agents' exposure to bacteria are not covered by the purchased insurance policy. In the accompanying Order, we grant the Plaintiff insurer's motion for summary judgment.

### A. Undisputed Facts

Defendants[1] are for profit medical spas providing cosmetic surgery procedures and medical spa services, including liposuction surgery, at various medical facilities. Undisputed Facts at ¶2. Defendants seek defense and indemnification coverage from Plaintiff Sentinel Insurance Company, Limited ("Sentinel") for multiple underlying bodily injury claims arising from patient exposure to Group A Streptococcus bacteria ("GAS") at "medical spa" surgical facilities operated and/or owned by Defendants in Timonium, Maryland and King of Prussia, Pennsylvania. *Id.* at ¶3.

Each Defendant is presently being sued in courts by claimants alleging they contracted severe invasive GAS bacterial infections, one of which was fatal (the "Underlying Claims"). *Id.* at ¶4. This exposure allegedly occurred in August and/or September 2012 during liposuction surgeries performed by Daniel Francis, D.O. ("Dr. Francis"). *Id.* at ¶5. Dr. Francis allegedly was the "Medical Director" at Defendants' Timonium, Maryland and King of Prussia, Pennsylvania facilities. *Id.* at ¶13. The Underlying Claims allege Dr. Francis and a nurse tested positive for GAS bacteria and Dr. Francis self-treated a bacterial infection of his hands, prior to his interactions with the underlying claimants. *Id.* at ¶15.[2] The Underlying Claims allege that

---

[1] Defendants in this action are Monarch MedSpa, Inc., Baltimore Laser Solutions, Inc., d/b/a Monarch Medspa, Gentle Laser Solutions, Inc., Delaware Medspa, LLC and Liberty Medspa, Inc. (collectively referred to as "Defendants"). *Plaintiff's Statement of Undisputed Facts* ("Undisputed Facts") at ¶1. Defendants do not oppose *Plaintiff's Statement of Undisputed Facts*.

[2] GAS is a bacterium that is most often detected in the throat and on the skin. *Id.* at ¶16. "These bacteria are spread through direct contact with mucus from the nose or throat of persons who are infected or through contact with infected wounds or sores on the skin." *Id.* at ¶17. The bacteria can be carried by asymptomatic individuals (called "carriers") for long periods of time; while carriers are less contagious than those with active infection, they are still capable of transmitting the bacteria that cause disease. *Id.* at ¶18. As alleged in the Underlying Claims, GAS bacteria can cause severe and even life-threatening diseases when they infect normally sterile body sites, such as blood, muscle, or lung, resulting in a condition called "invasive GAS," including necrotizing fasciitis and streptococcal toxic shock syndrome. Id at ¶19.

2

the bacterial transmission occurred from infected doctor, nurse or surgical equipment to each patient's open wounds during the liposuction procedures. *Id.* at ¶20.

### *Defendants purchased insurance coverage*

Defendants purchased a multi-part policy for the policy period of October 27, 2011 to October 27, 2012 with coverage for Business Liability and an Umbrella Liability. *Id.* at ¶34. Each Defendant is identified as a named insured. *Id.* at ¶35.

The parties agreed that the Business Liability coverage is subject to a $1 million per occurrence limit of insurance and a $2 million general aggregate. *Id.* at ¶36. Business Liability coverage is also subject to exclusion for exposure to fungi, bacteria and viruses:

### EXCLUSION - FUNGI, BACTERIA AND VIRUSES

This endorsement modifies insurance provided under the following:

### BUSINESS LIABILITY COVERAGE FORM
### OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

This insurance does not apply to:

1. Injury or damage arising out of or related to the presence of, suspected presence of, or exposure to:

   a.  Fungi, including but not limited to mold, mildew,      and yeast;

   b.  Bacteria;

   c.  Viruses; or

   d.  Dust, spores, odors, particulates or byproducts, including but not limited to mycotoxins and endotoxins, resulting from any of the organisms listed in a., b., or c. above;

from any source whatsoever.

2. Any loss, cost or expense arising out of the testing for, monitoring of, cleaning up of, removal of, containment of, treatment of, detoxification of, neutralization of, remediation of, disposal of, or any other response to or

3

assessment of, the effects of any of the items in 1.a., b., c. or d. above, from any source whatsoever.

However, this exclusion does not apply to "bodily injury" or "property damage" caused by the ingestion of food.

*Id.* at ¶37.

The Business Liability coverage is also subject to exclusion for "Professional Services":

### B. EXCLUSIONS

#### 1. Applicable To Business Liability Coverage

This insurance does not apply to:

***

#### j. Professional Services

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional service. This includes but is not limited to:

***

(4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

***

*Id.* at ¶38.

Defendants also purchased Umbrella Liability coverage, subject to a $1 million per occurrence limit of insurance and a $1 million general aggregate. *Id.* at ¶39. The umbrella liability coverage is in excess of the limits of the business liability coverage and/or self-insured retentions, depending on the purported potential coverage, if any, implicated by a claim. *Id.* at

4

¶40.    The Umbrella Liability coverage is subject to various terms, conditions and exclusions,

including the following exclusion for exposure to fungi, bacteria and viruses:

### FOLLOWING FORM ENDORSEMENT - FUNGI, BACTERIA AND VIRUSES

This endorsement modifies insurance provided under the:

### SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT

This policy does not apply to:

1.   Injury or damage arising out of or related to the presence of, suspected presence of, or exposure to:

   a.   fungi, including but not limited to mold, mildew, and yeast;

   b.   bacteria;

   c.   viruses; or

   d.   dust, spores, odors, particulates or byproducts, including but not limited to mycotoxins and endotoxins, resulting from any of the organisms listed in a., b., or c. above;

from any source whatsoever.

2.   Any loss, cost or expense arising out of the testing for, monitoring of, cleaning up of, removal of, containment of, treatment of, detoxification of, neutralization of, remediation of, disposal of, or any other response to or assessment of, the effects of any of the items in 1.a., b., c. or d. above, from any source whatsoever.

**EXCEPTION**

This exclusion does not apply if "underlying insurance" is maintained providing coverage for such liability with minimum underlying limits as described in the Schedule of Underlying Insurance Policies.

Any coverage restored by this **EXCEPTION** applies only to the extent of the scope of coverage provided by the "underlying insurance" but in no event shall coverage be broader than the scope of coverage provided by the policy of which this endorsement forms a part.

**Condition K. - Maintenance Of Underlying Insurance** applies to this exception.

*Id.* at ¶41.

Defendants also agreed to exclude coverage for professional services under the Umbrella

Liability policy coverage:

### EXCLUSION - DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the

### SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT

### SCHEDULE

Description of Professional Services:

1.     MEDICAL SPAS

\*\*\*

This policy does not apply to "bodily injury," "property damage," or
"personal and advertising injury" arising out of the rendering of or failure
to render any professional services described in the Schedule of this
endorsement.

*Id.* at ¶42.

### *Underlying claims for which Defendants seek indemnity and defense coverage.*

On October 3, 2014, Patricia Snow claimed she contracted a severe GAS bacterial

infection as a result of exposure to bacteria during the liposuction surgery performed on her at

the Timonium, Maryland facility on August 14, 2012 and August 15, 2012. *Id.* at ¶6.   On

October 28, 2014, the estate of Eula Witherspoon filed suit claiming that Mrs. Witherspoon

contracted a severe GAS bacterial infection as a result of exposure to bacteria during a

liposuction surgical procedure performed by Dr. Francis at Defendants' Timonium, Maryland

facility on September 11, 2012, which caused Ms. Witherspoon's death. *Id.* at ¶11. The Snow

and Witherspoon Complaints allege that:

> To a reasonable degree of medical certainty, lack of adherence to recommended
> practices for outpatient infection prevention, multiple unsanitary conditions and
> other deficient practices noted at the Monarch's facility in Timonium, Maryland
> allowed potentially infected health care providers (including but not limited to Dr.
> Francis and nurses employed by Monarch) and contaminated materials to come

6

into contact with Ms. Snow's [Ms. Witherspoon's] open wounds. These deviations were superimposed on Dr. Francis's admission of his self-treating cellulitis, a bacterial skin infection, prior to his interaction with Ms. Snow [Ms. Witherspoon] and the nurse exhibiting symptoms associated with a sore throat. The aforesaid were all proximate causes of Ms. Snow's [Ms. Witherspoon's] injuries and damages.

Additionally, lack of personal protective equipment (PPE) use among the health care workers such as Dr. Francis and his nurse, in contravention of accepted infection control practices and procedures, with the specific or tacit knowledge of Monarch, allowed for person-to-person transmission, specifically health care provider to patient transmission, especially given the matching GAS results from facility staff and case patient isolates. . . .

Also, upon information and belief, Monarch and/or Dr. Francis knew or should have known that the surgical equipment used during Ms. Snow's [Ms. Witherspoon's] operative procedures had not been properly sanitized before utilization and that Monarch and/or Dr. Francis knew or should have known that surgical and other equipment was outdated, expired, or not stored properly. . . .

*Id.* at ¶21.

On October 14, 2014, Ada Puzzo and her husband Mark Puzzo, sued Defendants alleging that they contracted severe GAS bacterial infections as a result of Ada Puzzo's exposure to bacteria during liposuction surgery performed at Defendant Monarch's King of Prussia, Pennsylvania facility on August 17, 2012. *Id.* at ¶7. Mark Puzzo alleges that he contracted a GAS bacterial infection as a result of caring for his wife, after her exposure to GAS bacteria during the liposuction procedure performed at the King of Prussia facility. *Id.* at ¶8. These plaintiffs allege:

In the health care setting, surgical patients are most vulnerable to GAS due to the break in mucosal or cutaneous barriers that occurs during these procedures.

Upon information and belief, lack of adherence to recommended practices for outpatient infection prevention, multiple unsanitary conditions, and other deficient practices at Monarch [King of Prussia] allowed potentially infected health care providers (including but not limited to Dr. Francis, who, upon information and belief, was in fact infected, and nurses employed by Defendants) and contaminated materials to come into contact with Carter's open wounds. These deviations were superimposed on Dr. Francis' admission of his self-treating cellulitis, a bacterial skin infection, at or around the time of his interaction with

7

Carter. The aforesaid were a proximate cause of Carter's injuries and damages, which also caused the harm suffered by Puzzo.

*Id.* at ¶8, 22.

On or about October 7, 2014, Rachel Machlinski filed suit claiming that she contracted a severe GAS bacterial infection as a result of exposure to bacteria during a liposuction surgical procedure performed by Dr. Francis at Defendants' Timonium, Maryland facility on August 14, 2012, alleging:

> Defendant Monarch was negligent insofar as it:
>
> A.     Permitted the engagement of the practice of medicine at Monarch's Timonium, Maryland facility in an unsterile environment, as referenced in the paragraphs herein above, thus allowing patients such as Ms. Machlinski's surgical wounds to come into direct contact with contaminated persons and/or objects.
>
> B.     Monarch knew, or should have known, that the necessary equipment including but not limited to surgical supplies, autoclaves, and other devices requisite to ensure a safe and sanitary environment were available at all times during surgical procedures including the procedures performed upon Ms. Machlinski as aforesaid and, notwithstanding the unavailability of said equipment, performed said surgical procedures nonetheless.
>
> C.     Failed to develop and maintain infection prevention and occupational health programs.
>
> ***

*Id.* at ¶23.

On or about October 15, 2014, Dayle Eaton filed suit against Defendants alleging that he contracted a severe GAS bacterial infection as a result of exposure to bacteria during a liposuction surgical procedure performed by Dr. Francis at Defendants' Timonium, Maryland facility on September 11, 2012:

> 86.     At all relevant times complained of, and on September 11, 2012, the Defendants, Monarch Med Spa, Inc., BLS t/a "Monarch Med Spa", Kevin T. Campbell, Tashya Kowalski, and Daniel L. Francis, D.O., knowingly authorized, sanctioned and permitted the Defendant, Daniel L. Francis, D.O., to continue to perform "Smart Lipo" liposuction procedures even though they knew, or through the exercise of reasonable care, should have known, that the Defendant, Daniel L.

8

Francis, D. O., had contracted and was being treated for a cellulitis infection that other clients, patients and/or business invitees of the Defendants, including, but not necessarily limited to, Ada Puzzo, Patricia Ann Snow and Rachel Machlinski, all of whom had submitted to "Smart Lipo" liposuction procedures performed and/or participated in, by the Defendant, Daniel L. Francis, D.O., had previously sustained life threatening complications, requiring medical intensive care, hyperbaric therapies and prolonged inpatient hospitalizations, as a result of being exposed to, and/or contracting GAS sepsis.

124.   The Summary Report notes that the referred to patients had undergone liposuction at the Timonium Facility on August 14 and September 11, 2012. All subject patients had contact with a "Dr. A" who, upon information and belief, is the Defendant, Daniel L. Francis, D.O.   The referred to patients were also reported to have had contact with a surgical assistant and a surgical support team member, both of whom were the actual or apparent agents, servants and/or employees of the Defendants, Monarch Med Spa, Inc., BLS t/a "Monarch Med Spa", Kevin T. Campbell, Tashya Kowalski-Campbell, and Daniel L. Francis, D.O., who were involved in post-operative follow up.

127.   The Summary Report concluded that the referred to patients' liposuction procedures at the Timonium Facility were associated with a "GAS" outbreak based upon the fact that the multiple liposuction procedures resulted in adverse outcomes, time of infection onset, the lack of other known connections between cases, and matching "GAS" strains among the primary cases and the agents, servants and/or employees of the Defendants, including the Defendant, Daniel L. Francis, D.O.

*Id.* at ¶24.

These Underlying Claims allege that, on September 17, 2012, the infection control unit of an acute care hospital in Baltimore City reported to Maryland Department of Health and Mental Hygiene ("DHMH") multiple cases of severe invasive GAS bacterial infection in patients who had recently received liposuction procedures at the Timonium, Maryland facility. *Id.* at ¶25. The Centers for Disease Control and/or the DHMH determined that two employees working at Monarch's Timonium, Maryland facility (specifically, Dr. Francis and a nurse who assisted Dr. Francis) tested positive for GAS bacteria. *Id.* at ¶26. The DHMH concluded that cases arising out of liposuction procedures at Defendants' facility in Timonium, Maryland were associated with the GAS outbreak based on the multiple liposuction procedures which resulted in adverse

9

outcomes, time of infection onset, lack of other known connections between cases, and matching GAS strains among the primary cases and health care workers. *Id.* at ¶27.

The DHMH reported that Defendants "allowed for person-to-person transmission, specifically health care provider to patient transmission" of the GAS bacteria at the Timonium facility "especially given the matching GAS results from facility staff and case patient isolates." *Id.* at ¶28. On September 19, 2012, pursuant to §18-102(b) of the Health-General Article of the Maryland Code Annotated and Code of Maryland Regulations 10.06.01.06(c), Monarch's Timonium, Maryland facility was ordered to cease operations. *Id.* at ¶29.

The Pennsylvania Department of Health also investigated Monarch's King of Prussia, Pennsylvania facility, which led to the cessation of operations at that facility. *Id.* at ¶30.

### *Defendants' admissions*

Defendants concede that the Underlying Claims "arise out of exposure to Group A Streptococcus (GAS) at medical spa surgical facilities operated or owned by Defendants." *Id.* at ¶31. Defendants also admit that this exposure to Group A Streptococcus to patients during liposuction or other medical spa surgical procedures allegedly resulted in "invasive streptococcal infections." *Id.* at ¶32.

Defendants admit that GAS is bacteria and admit further as follows:

- According to the DHMH, Group A Streptococcus ("GAS") is a Gram-positive bacterium that is most often detected in the throat and on the skin.

- These bacteria are spread through direct contact with mucus from the nose or throat of persons who are infected or through contact with infected wounds or sores on the skin.

- The bacteria can also be carried by asymptomatic individuals (called "carriers") for long periods of time, and while carriers are less contagious than those with active

10

> infection, they are still capable of transmitting the
> bacterium that can cause disease.

*Id.* at ¶33.

### B. Analysis

The Court is tasked with interpreting an insurance contract, rather than a jury. *Canal Ins. Co. v. Underwriters at Lloyd's London,* 435 F.3d 431, 435-36 (3d. Cir. 2006); *Gamble Farm Inn, Inc. v. Selective Ins. Co.,* 656 A.2d 142 (Pa.Super. 1995). Our responsibility is to ascertain the intent of the parties as determined by the language of the written insurance contract. *Id.* Where ambiguous, an insurance policy provision is construed in favor of the insured. Where, however, we find that the language of the provision is clear and unambiguous we are required to give effect to that language as evidence of the benefit of the bargain between the parties. *Id.*

The standard for summary judgment in a declaratory judgment action is the same as for any other type of relief. *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Marketing Board,* 298 F.3d 201, 210 n. 12 (3rd Cir.2002). In this case, the material facts are not disputed; we are called upon to interpret the terms of an insurance policy, which raises questions of law for our determination. *Pacific Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985). Our analysis begins with first determining whether the third parties' underlying complaints trigger coverage. *General Accident Ins. Co. of America v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997). The particular causes of action alleged are not determinative; rather, we are required to look at the facts alleged in each complaint. *See Scopel v. Donegal Mutual Ins. Co.,* 698 A.2d 602 (Pa. Super. 1997). Artful pleadings designed to avoid exclusions in liability insurance policies will not overcome the text and factual allegations of the complaint. *Colony Ins. Co. v. Mid-Atlantic Youth Services Corp.,* C.A. No. 09-1773, 2010 WL 817703 (W.D. Pa. March 9, 2010) citing *Mutual Benefit Insurance Co. v. Haver,* 725 A.2d 743, 745 (Pa. 1999).

11

### 1.   Bacterial Exclusion

Here, as shown in each of the underlying complaints, and as Defendant admits, the cause of the injury and the source of the exposure derive from exposure to bacteria which resulted in sustained injury in the form of severe bacterial infections.   Defendants' insurance policies specifically exclude claims related to exposure to bacteria.  *Compare* Undisputed Facts at ¶¶37, 41 and *Certain Underwriters at Lloyd's London v. Creagh,* C.A. No.12–571, 2013 WL 3213345 (E.D. Pa. June 26, 2013) *aff'd* 563 Fed. Appx. 209 (3d Cir. 2014)(uncontroverted evidence of bacteria causing damage was subject to "microorganism exclusion"); *Alea London Ltd. v. Rudley*, No. 03-1575, 2004 WL 1563002 (E.D.Pa. 2004).

As the parties negotiated and presumably paid for, a fungi bacteria virus exclusion, these exclusions bar coverage and Sentinel has no duty to defend or indemnify Defendants in the underlying complaints identified in this case. Sentinel is entitled to summary judgment under the benefit of the bargain evidenced in its insurance contract with the Defendants.

### 2.  Professional services exclusions

In addition to the bacteria exclusion, the Business Liability part of the insurance policy excludes indemnity and defense for claims of "bodily injury" arising out of rendering of or failure to render any **professional service** which specifically includes:  medical, surgical, dental, x-ray or nursing services treatment, advice or instruction; any health or therapeutic service treatment, advice or instruction; any service, treatment or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming. *Id.* at ¶38. Similarly, the Umbrella Liability policy contains an "Exclusion for Designated Professional Services," which excludes coverage for "bodily injury" arising out of the rendering of or failure to render any professional services described in the Schedule listing "Medical Spas."   *Id.* at ¶42.

Here, all of the underlying claims require consideration and application of a professional standard of care and accordingly fall within the broad definition of "professional services." *American Economy Ins. Co. v. Schoolcraft*, 551 F. Supp. 2d 1235, 1242 (D.Colo. 2007). Where, as here, the complained of conduct is "due to rendering or failure to render any professional service" such claims are excluded by the professional services exclusion." *Schoolcraft*, 551 F.Supp.2d at 1242. A professional services exclusion has been deemed to exclude coverage in this Circuit when the alleged conduct subject to the underlying claim was "derived solely from his providing [...] services to a client." *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 985 (3d Cir. 1988).

Underlying claimants allege they suffered from infection caused by health care providers and contaminated materials allowed to come in contact with the patients' open wounds during surgery. Underlying claimants allege Defendants' unique professional services including liposuction caused transmission of the evasive infection by one of the professionals or their instruments used during the liposuction. As specifically alleged in the underlying claims, these injuries arise from the performance of professional services provided at the Defendants' offices by professionals or their instruments. This Professional Services exclusion also applies to allegations of the negligent training, supervision and monitoring of others working under the professionals. *See American Rehabilitation and Physical Therapy, Inc. v. American Motorists Ins. Co.,* 829 A.2d 1173 (Pa. Super. Ct. 2003) *rev'd on other grounds*, 849 A.2d 1202 (Pa. 2004). As in *American Rehabilitation,* the services provided by other persons at the Defendants' medical spas are an integral part of providing such professional services so as to also be considered "professional services" and to be properly excluded under the insurance contract. *Id.*; *See also E.G. Ditch v. Waynesboro Hospital,* 917 A.2d 317, 323 (Pa. Super. Ct. 2007).

13

To invoke coverage, Defendants argue that coverage for the Underlying Claims for misrepresentation are not barred by either the bacteria or professional services exclusions. They are incorrect. Any underlying misrepresentation claims concerning the nature of the services relate directly to professional services. *Schoolcraft, supra,* 551 F.Supp.2d at 1242. Allegations of lack of informed consent and deviations from the standard of care also cannot be separated from professional services. *Id.; see also Howard v. University of Medicine and Dentistry of New Jersey,* 800 A.2d 73, 84 (N.J. 2002)("stripped to its essentials, plaintiff's claim [alleging misrepresentations concerning credentials and experience] is founded on lack of informed consent"). Where, as here, plaintiff claims a misrepresentation allegedly induced consent, it is a lack of informed consent issue, not fraud. *Howard, supra; Willis v. Bender,* 596 F.3d 1244 *(10th Cir. 2010)(negligence principles apply to situation where procedure was authorized but consent was uninformed). Underlying claimants' allegations of lack of informed consent and misrepresentation are purely medical malpractice issues covered by the professional services exclusions.

The Defendants in the medical spa field indisputably render medical services and fall under the Professional Services exclusion. To now claim that a fraud claim regarding the nature of the quality of professional services is excluded from the definition of "professional services" seemingly ignores the obvious: the marketing of the professional services, regardless of its veracity, is directly connected to the rendering of medical services. Claims relating to those professional services fall within the Professional Services exclusion.

## C.    Conclusion

The insurance policy negotiated by the parties excludes coverage for claims that Defendants exposed patients to bacteria from any source whatsoever. There is no dispute that the underlying bodily injuries claimed are bacterial infections arising from an admitted exposure

14

to bacteria by Defendants' authorized professionals and agents. The insurance policy also excludes coverage for "bodily injury" arising out of the rendering of, or failure to render any professional services. Plaintiff meets its burden of proving that the underlying complaints fall solely and entirely within the insurance policy exclusions. *Schoolcraft, supra.* Underlying Claims alleging Defendants negligently failed to exercise the requisite reasonable care, skill, judgment and expertise in the medical spa services business are excluded from coverage by the "Professional Services" exclusions. Claims alleging a bacterial transmission occurring from doctor, nurse or surgical equipment to each patient's open wounds during liposuction procedures and that Defendants failed to adhere to recommended practices to avoid infection, and due to multiple unsanitary conditions and other deficient practices, are excluded from coverage by the "Fungi, Bacteria and Viruses" exclusions.

Under the plain and unambiguous language of the Bacteria and Professional Services exclusions of the insurance policy, Sentinel has no duty to defend or indemnify the Defendants in the underlying claims. In the accompanying Order, we grant Plaintiff's Motion for Summary Judgment declaring that it has no duty to defend or indemnify the Defendant in the Underlying Claims.

15